Argued and submitted February 26, affirmed October 7, 2009,
petition for review denied February 18, 2010 (347 Or 718)

## CALVIN J. JONES,
*Petitioner,*

*v.*

## BOARD OF PAROLE
## AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A133741

218 P3d 904

Marc D. Brown, Deputy Public Defender, argued the cause for petitioner. With him on the briefs was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Jeremy Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Petitioner seeks review of an order of the Board of Parole and Post-Prison Supervision in which the board affirmed its earlier order denying petitioner re-release on post-prison supervision (PPS) and set a PPS release date of October 18, 2015. He asserts that the board erred in not applying an administrative rule that would require his release in 180 or fewer days. The issue presented by petitioner requires that we interpret the statutes and rules regarding sentencing in effect in 1992, when petitioner committed his crime. We review the board's order to determine whether it is inconsistent with an agency rule or violates a statutory provision. ORS 144.335(3); ORS 183.482(8). For the reasons set forth below, we affirm the board's order.

Petitioner was convicted of murder in 1993; pursuant to ORS 163.115 and the felony sentencing guidelines, he was sentenced to 134 months in prison and given a lifetime term of PPS. In November 2005, the board imposed an incarcerative sanction based on petitioner's violation of a condition of PPS and, after a future disposition hearing in February 2006, it established the 2015 release date noted above. Having exhausted his administrative remedies, petitioner seeks review of that order. On review, petitioner argues that the board erred in not applying certain limitations on the term for which he could be reincarcerated as a sanction for violating the terms of his PPS. We begin with an overview of the statutes and rules in effect at the time petitioner committed his crime.

At the time petitioner committed his crime, a portion of the murder statute, ORS 163.115(3)(a) (1991),[1] provided that "[a] person convicted of murder shall be punished by imprisonment for life." The sentencing court was required to order that the defendant be confined for a minimum of 10 years without the possibility of parole or other forms of release. Moreover, the sentencing court could order that the defendant be confined for up to an additional 15 years without the possibility of parole or other forms of release. ORS

---

[1] ORS 163.115 has been amended numerous times since 1991, but those versions of the statute are not at issue in this case. All references in the opinion are to the 1991 version.

163.115(3)(b), (c). Thus, the murder statute provided for imposition of an indeterminate life sentence with the possibility of parole after 10 to 25 years. In 1989, however, the legislature had abolished the then-existing scheme of indeterminate sentencing and had replaced it with the felony sentencing guidelines, which provided generally for determinate sentences consisting of a term of incarceration, followed by a term of PPS. The crime of murder was placed on the sentencing guidelines grid.

In *State v. Morgan*, 316 Or 553, 555, 856 P2d 612 (1993), the Oregon Supreme Court addressed "whether the enactment of sentencing guidelines statutes in 1989 impliedly repealed ORS 163.115(3), which requires and authorizes mandatory murder sentences." The court first concluded that the enactment of the guidelines did not effectively repeal the mandatory minimum sentence of 10 years and the optional 15-year sentence provided for in ORS 163.115(3)(b) and (c). *Id.* at 558. The court then turned to the effect of the sentencing guidelines on paragraph (3)(a)—the provision requiring a sentence of "imprisonment for life." On this question, the court concluded that the legislature intended to repeal the indeterminate sentence of imprisonment for life and replace it with a sentence consisting of the fixed terms provided for in paragraphs (b) and (c) of ORS 163.115(3) (10 to 25 years), followed by a lifetime term of PPS. According to the *Morgan* court, after enactment of the guidelines in 1989, "even though one convicted of murder [could] no longer be sentenced to 'imprisonment for life' (other than as a departure sentence), one convicted of murder can be sentenced to imprisonment for the fixed terms specified in paragraphs (b) and (c), with post-prison supervision thereafter for life[.]" 316 Or at 560. "[T]hat interpretation bec[ame] a part of the statute as if written into it at the time of its enactment." *Stephens v. Bohlman,* 314 Or 344, 350 n 6, 838 P2d 600 (1992).

Thus, at the time petitioner committed murder in 1992, a defendant could not be sentenced to "imprisonment for life," unless the sentence was achieved by way of an upward departure under the sentencing guidelines. Rather, during the relevant time period, "imprisonment for life" in

ORS 163.115(3) meant imprisonment for a determinate number of years, followed by a lifetime term of PPS.

Two administrative rules in effect at the time petitioner committed murder are relevant to the issue petitioner presents in this case. OAR 253-11-004(3) (Sept 1, 1989) limited reincarceration for PPS violations to 90 days for technical violations and 180 days for conduct constituting a crime. But OAR 253-05-004 (Sept 1, 1989) provided:

"(1) The term of post-prison supervision for an offender serving a life sentence pursuant to ORS 163.105[2] or ORS 163.115 shall be for the remainder of the offender's life, unless the Board finds a shorter term appropriate. * * *

"(2) The limit on sanctions for post-prison supervision provided in OAR 253-11-004(3) [that is, the 90- and 180-day limitations] shall not apply to offenders on post-prison supervision as provided by this rule."

With that legal framework, we turn to petitioner's argument. Petitioner asserts that the 180-day limit on incarcerative sanctions applies to him, so that the board erred in ordering that he be reincarcerated for 120 months as a PPS sanction. He reasons as follows. The exemption from the 90- and 180-day limitations applies to those "serving a life sentence pursuant to 163.105 or ORS 163.115." He is not and was not serving a "life sentence"; rather, he was sentenced to a determinate sentence of 134 months in prison and a lifetime term of PPS. Focusing on the phrase "imprisonment for life" in ORS 163.115(3)(a), he contends that "the question is whether lifetime PPS is a sentence of 'imprisonment for life' as provided in ORS 163.115(3) (1991)." Petitioner, of course, would answer that inquiry in the negative. It follows, in petitioner's view, that he should have been re-released on PPS after, at most, 180 days.

The board frames the issue in a slightly different way. It asserts that "[p]etitioner's claim requires resolution of two questions: (1) whether petitioner is serving a 'life sentence,' and (2) if so, whether that sentence is 'pursuant to

---

[2] ORS 163.105 addresses sentencing options for aggravated murder and is not at issue here.

ORS 163.105 or ORS 163.115.' " The board asserts that both of those requirements are met here, so that the 2015 release date is lawful. As explained below, we agree with the board's framing of the issue and with its ultimate conclusion.

■■    We first address whether petitioner is serving a "life sentence." Although petitioner focuses on the phrase "imprisonment for life" in ORS 163.115(3), we begin with the phrase in the rules. The rules that provide the limitations on the imposition of sanctions for PPS violations—and the exceptions to those limitations—use the phrase "life sentence." A "sentence," under the guidelines, comprises both a term of incarceration and a term of PPS. *See State v. Hopson*, 220 Or App 366, 373, 186 P3d 317 (2008) ("Post-prison supervision is part of a sentence."); *Lattymer v. Thompson*, 170 Or App 160, 163, 12 P3d 535 (2000), *rev den*, 332 Or 56 (2001) (same). And, consistently with *Morgan*, "imprisonment for life," as that term was used in ORS 163.115(3), and "life sentence," as that term was used in OAR 253-05-004 (Sept 1, 1989), both meant a term of incarceration followed by PPS for life. No other type of sentence was available for murder at the time petitioner was sentenced. Moreover, we understand the rule to have referred to an incarcerative term followed by PPS—rather than the indeterminate life imprisonment sentence that existed before the guidelines were enacted—as it uses the phrase "post-prison supervision," a concept that did not exist before enactment of the guidelines. Thus, consistently with *Morgan*, a "life sentence" for murder meant a determinate prison term, followed by a lifetime term of PPS—exactly the sentence petitioner received. It follows that petitioner received a "life sentence" as that term was used in OAR 253-05-004 (Sept 1, 1989).

The exception to the 90- and 180-day limitations in OAR 253-11-004(3) (Sept 1, 1989) applies only to those serving a "life sentence pursuant to * * * ORS 163.115[.]" Having determined that petitioner was serving a life sentence, we also conclude that the sentence was imposed pursuant to ORS 163.115. Petitioner appears to recognize as much when he asserts, "Here, petitioner was sentenced pursuant to ORS 163.115 * * *." That statute authorizes the imposition of a sentence following a murder conviction and, consistently

with *Morgan*—in which the court concluded that the enactment of the guidelines did not repeal ORS 163.115(3)—a life sentence for murder is imposed pursuant to that statute.

In conclusion, because petitioner received a life sentence pursuant to ORS 163.115, the 90- and 180-day limitations on reincarceration for PPS violations do not apply to him. The board did not err in setting a PPS release date of October 18, 2015.

Affirmed.